■ In the Matter of the Estate of MATTHEW CAHILL, Deceased. ELEANOR M. O'KEEFE et al., Appellants-Respondents; JOHN A. CAHILL, as Administrator of the Estate of MATTHEW CAHILL, Deceased, Respondent-Appellant.

MEMORANDUM. Decree of Surrogate's Court, County of Bronx, entered September 5, 1963, which directed respondents to pay over to petitioner the total sum of $9,550 as an asset of the estate of Matthew Cahill, deceased, and which further held that the sum of $1,000 was a valid gift to respondent Thomas C. O'Keefe, modified on the law and on the facts to the extent of decreeing that the total sum of $9,550 were valid gifts to respondents Eleanor M. O'Keefe and Thomas C. O'Keefe during the lifetime of Matthew Cahill, and as so modified is otherwise affirmed. Matthew Cahill died intestate May 25, 1962, leaving one daughter, respondent Eleanor M. O'Keefe, and two sons. In 1956, decedent created a joint savings account with his daughter from his own funds. During 1961, the daughter and her husband purchased a home and part of the purchase price for the home was paid by two withdrawals from the joint bank account, one by a check in the sum of $2,625 withdrawn on July 26, 1961, and the other by check in the sum of $6,925 withdrawn on August 28, 1961. About the time of the said withdrawals, an additional sum of $4,000 was withdrawn and given to the two sons of the decedent, or a sum of $2,000 each. Decedent moved into his daughter's new home and lived with her until his death. After each withdrawal, the savings bank account book was returned to decedent and remained in his possession and under his control. A disinterested witness and lifelong friend of the decedent testified that the decedent told her that he gave his daughter the "down payment for the house" and that the house was "well worth the money." True, a strict legalistic interpretation of the term "down payment" might limit the term to the sum paid on the execution of the contract of purchase and sale. However, when taken in the context of the witness' testimony on the trial, the use of the term by the decedent would indicate that he referred to all cash payments made by his daughter and son-in-law in connection with the purchase of the home. When decedent died, the balance in the account was over $6,000, which has been retained by the daughter without protest. Nor can we accept the view that the decedent, in making the first gifts to his daughter and sons, intended to make them roughly equal beneficiaries of his largesse. Such an intention is at least to some degree belied by his continuance of the bank account jointly with his daughter right up to the time of his death. We, therefore, conclude that the finding of the Surrogate that respondents have failed to establish bona fide gifts in respect to the two withdrawals used as part of the purchase

price of respondent's home, is against the weight of the evidence and to that extent the decree should be modified (*Matter of Jennings*, 259 App. Div. 822, affd. 283 N. Y. 677), without costs.

STEUER, J. (dissenting). We dissent from so much of the majority determination as reverses the disposition of the Surrogate in regard to the second alleged gift to the decedent's daughter, Eleanor M. O'Keefe, in the sum of $6,925.

The proceeding involves three alleged gifts, claimed to have been made by the decedent prior to his death. As to one, for $1,000, made to decedent's son-in-law, there is unanimous concurrence in this bench that the Surrogate's determination in favor of the gift is supported by the evidence. The other two gifts, found by the Surrogate not to have been made, were to the deceased's daughter. Both were represented by withdrawals from a savings account, one in the sum of $2,625 dated July 26, 1961, and one in the sum of $6,925 dated August 28, 1961. The account was a joint account with the daughter but concededly the funds were the decedent's and he retained control of them up to his death. The evidence to support the gifts came from a Mrs. Lynch, a long-time friend of the family. She testified that on numerous occasions the decedent told her that his daughter was about to acquire a house, and that when she did he would supply the down payment and would go to live with her. She did acquire the house, the moneys were used for its purchase, and he did live with her in it, together with her family. Mrs. Lynch's testimony was clear up to this point but less clear when pressed on the point as to whether decedent, in addition to stating what he intended to do as to giving his daughter the funds, actually had done so. The Surrogate found the testimony deficient in this respect, but as to the first check we agree with the majority's holding that it suffices.

However, neither Mrs. Lynch nor anyone else testified as to any amounts that the decedent intended to give or did give his daughter. The testimony was always the "down payment." Concededly the first sum represented the initial payment made to the seller and the second, made approximately one month later, the balance above the mortgage. If by "down payment" the decedent meant the initial payment required on the contract there is no proof whatever that the second withdrawal represented a gift. It is of course difficult to determine what the decedent meant by the use of the term "down payment", and recourse to definition in legal opinions would be of no assistance. His actions at the time, to our minds, are a significant guide. Besides his daughter, decedent had two sons. When he directed his daughter to make the first withdrawal he also directed that $2,000 be paid to each of his sons. This indicates to us that he was desirous of making roughly equivalent gifts to each of his three children. At the time of the second withdrawal, there was no gift to either of the sons. Nothing was proved as having occurred within the month interval between the withdrawals as effecting any estrangement from the sons. Either the decedent abandoned his plan for equal gifts (the natural disposition of a father) or he did not not intend the second withdrawal to be a gift. The latter interpretation of his actions accords exactly with a definition of what he termed the "down payment" to be and gives complete effect to Mrs. Lynch's testimony. Furthermore, as to which of the disparate meanings the deceased intended, the burden of proof was on the person claiming the gift, and no proof whatever was offered on this point.

We therefore conclude that the Surrogate's determination as to the second alleged gift was correct and would affirm so much of the decree as directs respondent Eleanor M. O'Keefe to turn over this sum to the petitioner.

Breitel, J. P., Eager and Staley, JJ., concur in Memorandum; Steuer, J., dissents in opinion, in which Valente, J., concurs.

Decree modified, etc.